### WALLACE et al. v. NEUMANN et al.

### No. 1291.

Court of Civil Appeals of Texas. Eastland.

June 15, 1934.

Rehearing Denied July 13, 1934.

HICKMAN, Chief Justice.

This suit had its origin in the filing of a petition by Mrs. Laura A. Wallace and her husband, H. C. Wallace, against August Neumann and Paul Neumann in the nature of an action in trespass to try title to approximately 40 acres of land, not particularly described in the petition, but alleged to be off the north end of the south one-half of section 52, block 18, Texas & Pacific Railroad Company land, in Jones county. Two days later appellants filed an application for injunction, alleging that the appellees had constructed a fence across the north end of their (appellants') farm, thereby detaching 30 acres of land belonging to them, and praying for a mandatory injunction directing appellees to remove said fence from the field and place it back in its former position. On April 18th, thereafter,

the appellees filed their original answer, consisting of a general demurrer, general denial, and a plea of not guilty. Later, on August 16th, they filed their first amended original answer and cross-action, which cross-action was a suit in trespass to try title to 30½ acres of land, particularly and accurately described; it being the same land included within the boundaries of the old original fence and the line of the new fence erected by them across the plaintiffs' field. The next pleading filed was denominated "Plaintiffs' First Amended Original Petition and Answer to Defendants' First Amended Original Answer and Cross Action." By this petition, the Wallaces, who were the plaintiffs, in effect became the real defendants in the suit. This pleading consisted of a general denial and a plea of not guilty, following which, by a special plea, they claimed title to 30½ acres of land under the ten years' statute of limitation (Rev. St. 1925, art. 5510). The cause was tried before the court without the assistance of a jury, and resulted in a judgment that the Wallaces take nothing, that the prayer for injunction be denied, and that the Neumanns recover of them title to, and possession of the 30½ acres of land described in their cross action. From this judgment the Wallaces have appealed.

 Upon the request of appellants the trial court filed findings of fact and conclusions of law, which are attacked by the several assignments in their brief. One of the conclusions complained of was that the description of the land in controversy, as contained in appellants' petition, was insufficient, and that the land could not be located on the ground from such description. If the record contained no further description than the field notes as set out in paragraph 3 of the first amended original petition, this conclusion would probably be upheld, for the only attempt therein to locate the beginning corner was with reference to the tract itself. The first call in these field notes reads as follows: "Beginning in the center of the line directly opposite and just west of the north west corner of the fence line surrounding the 30½ acres of land herein described for the northwest corner of this tract." Clearly, this call, within itself, does not describe a starting point. By considering the other calls we find that this beginning point was somewhere in the west boundary line of section 52 and the east boundary line of section 51, but these other calls do not afford the means for a definite location of that point on said line. But, we have concluded that the sufficiency of the description must not be determined alone by the field notes as set out in this paragraph of the petition. For all practical purposes the Wallaces were defendants in this lawsuit. Their tenants had removed the fence erected by appellees across their field and they were in possession of the land at the time the cross-action was filed. In that cross-action the particular tract of land in controversy was accurately described. The amended petition of the Wallaces, in which was contained the alleged insufficient description, was filed in reply to this cross-action, and this petition, in paragraph 5, contained many allegations regarding the description of the land which, when considered in connection with the other portions of the petition and in connection with the description in the cross-action, leaves no doubt in our minds but that the description was sufficient to identify the particular tract of land awarded to the Neumanns in this case as the land claimed by the Wallaces under the ten years' statute of limitation. If the judgment of the trial court rested alone upon the conclusion regarding the description of the land, it would be our opinion that same should not be permitted to stand.

 But, the judgment has other support. The trial court also concluded that appellants failed, by the evidence, to establish title under the ten years' statute of limitation. R. S. 1925, art. 5510. The north one-half of survey 52 was patented to the father of the Neumanns in 1928. A patent to the south one-half had been issued prior thereto. The land in controversy is within the north one-half. There is no conflict between the two surveys, as the field notes of the later patent to the north one-half connect with the north boundary line of the south one-half. It is not denied that the Neumanns established record title to the land in controversy, which authorized the judgment rendered, unless the Wallaces overcame the title thus established under their plea of limitation. The question thus presented is: Does the record reflect that the Wallaces failed to establish title to this land under the ten years' statute of limitation? According to the evidence, the old fence line across the north end of the 30½-acre tract in controversy was erected in 1889, and for more than 30 years this 30½-acre tract has been inclosed by a fence in the same inclosure as other lands adjoining it on the south, referred to in this record as the "Martin tract." Mrs. Wallace purchased this tract from S. Martin in 1932, and immediately went into possession thereof, including the tract in suit. Contrary to the contention of appellees, we are convinced

that the facts are sufficient to tack the possession of the Wallaces on to that of Martin. It is provided in article 5516 that: "Peaceable and adverse possession need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them." Under our holding in McAnally v. Texas Co., 32 S. W.(2d) 947, the facts in the instant case are sufficient to show privity of estate between Martin and Mrs. Wallace, notwithstanding the land in controversy was not included in the field notes in the deed from him to her. But, the weakness in appellants' case lies in the fact that the evidence does not establish that the adverse possession of Martin began more than ten years prior to the filing of the cross-action by the Neumanns. The original answer of the Neumanns, in which was contained the general denial and a plea of not guilty, was filed on April 18, 1933, and their cross-action, in which they sued appellants in trespass to try title for the land, was filed August 16, 1933. The filing of this original answer on April 18th suspended the running of the statute of limitation pending final adjudication. Taylor v. W. C. Belcher Loan & Mort. Co. (Tex. Civ. App.) 265 S. W. 403; Zachry v. Moody (Tex. Civ. App.) 59 S.W.(2d) 846. But, regardless of whether that is the correct rule, we may be certain that the filing of the cross-action on August 16, 1933, had that effect. The burden was upon the appellants to establish ten years' adverse possession under the terms of article 5510, prior to April 18, 1933, and, at all events, prior to August 16, 1933. In their evidence they made no attempt to connect their title to any prior vendor, except Martin. Mr. Martin testified in the case, but we are not informed either as to the name of his vendor, or as to the character of his possession. He did not claim to have a deed to the land in suit. The limitation title asserted had its inception, therefore, so far as the evidence discloses, in the possession of Martin. One witness testified that he was in possession of this land in 1902, and another witness that he was in charge thereof in 1911 and 1912. There was evidence that a man named Gist occupied it for several years, but the date of his occupancy is not stated. In short, there was no evidence to establish privity of estate between Martin and any prior possessor. On this important question the record is silent.

With regard to Martin's possession, he testified that he moved on the land in 1923. As to whether it was early in that year or near its close would be a matter of pure conjecture. There is no evidence that he had possession through tenants prior to the time he moved upon it. The burden resting upon appellants was not discharged by the mere statement of Martin that, "I moved on it in 1923." More definite evidence than that is required to raise the issue of limitation.

It follows that, in our opinion, the judgment of the trial court should be affirmed, and it is accordingly so ordered.